**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
CLAIRE F. LEDER, on behalf of herself
and all others similarly situated,

                 Plaintiff(s),

      -against-

AMERICAN TRAFFIC SOLUTIONS, INC.,
ATS CONSOLIDATED, INC., NASSAU
COUNTY TRAFFIC AND PARKING
VIOLATIONS AGENCY, and JOHN
DOES 1-10,

                Defendants.
---------------------------------------------------------X

               **MEMORANDUM OF**
               **DECISION & ORDER**
               14-cv-103 (ADS) (GRB)

**<u>APPEARANCES:</u>**

**Squitieri & Fearon, LLP**
*Attorneys for the Plaintiff*
32 East 57th Street, 12th Floor
NY, NY 10022
      By: Olimpio Lee Squitieri, Esq., Of Counsel

**Burns & Levinson**
*Attorneys for the Defendants American Traffic Solutions, Inc. and ATS Consolidated, Inc.*
125 Summer Street
Boston, MA 02110
      By: Robert D. Friedman, Esq.
          Sara Decatur Judge, Esq., Of Counsel

**Ruskin Moscou Faltischek, P.C.**
*Attorneys for the Defendant Nassau County Traffic and Parking Violations Agency*
1425 RXR Plaza, East Tower, 15th Floor
Uniondale, NY 11556
      By: Mark S. Mulholland, Esq.
          E. Christopher Murray, Esq., Of Counsel

**Office of the Nassau County Attorney**
*Attorney for the Defendant Nassau County Traffic and Parking Violations Agency*
1 West Street
Mineola, NY 11501
      By: Andrew R. Scott, Deputy County Attorney

**SPATT, District Judge**.

On January 7, 2014, the Plaintiff Claire F. Leder (the "Plaintiff") on behalf of herself and all others similarly situated commenced this action against the Defendants American Traffic Solutions, Inc., ATS Consolidated, Inc., and the Nassau County Traffic and Parking Violations Agency (collectively, the "Defendants"). She asserts that the Defendants operated a red light camera monitoring system in Nassau County that failed to conform to federal and state guidelines and resulted in the issuance of invalid tickets to individuals, including the Plaintiff, from 2009 through the present. As such, the Plaintiff alleges that the Defendants violated (i) 42 U.S.C. §§ 1983 and 1988 based upon alleged violations of the Fifth and Fourteenth Amendments of the United States Constitution (ii) the Due Process clause of the New York State Constitution; and (iii) Section 11 of the New York Civil Right Law ("NYCRL"). In addition, the Plaintiff alleges a common law claim of unjust enrichment and seeks declaratory and injunctive relief.

Presently before the Court are separate motions by the Defendants American Traffic Solutions, Inc. and ATS Consolidated, Inc. (collectively, "ATS") and the Defendant Nassau County Traffic and Parking Violations Agency ("Nassau TPVA") to dismiss the Plaintiff's class action complaint pursuant to Federal Rules Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court grants the Defendants' motions and dismisses the Plaintiff's complaint in its entirety.

## I. BACKGROUND

### A. Underlying Facts

The Court draws the following facts from the Plaintiff's class action complaint and construes them in the light most favorable to the Plaintiff.

**1. The Parties**

The Plaintiff does not clarify her circumstances or background, other than, as described below, on January 10, 2011, she received a ticket for running a red light on "SB New Hyde Park Road at Marcus Avenue" in Nassau County, New York. (Compl. at ¶¶ 5, 42.)

The Defendant American Traffic Solutions, Inc. is a Kansas corporation with its primary place of business located in Scottsdale, Arizona. (<u>Id.</u> ¶ 6). It is one of the two largest traffic camera operators in the United States and was the vendor used by Nassau County to install and service red light cameras for the RLC Program. (<u>Id.</u> at ¶¶ 6, 11.)

The Defendant ATS Consolidated, Inc. is corporation of unspecified citizenship, which also has its principal place of business in Scottsdale, Arizona. (<u>Id.</u> at ¶ 7.) It is the sole shareholder of American Traffic Solutions, Inc. (<u>Id.</u>)

The Defendant Nassau TPVA is a department of the Nassau County government responsible for implementing Nassau County's Red Light Camera Program ("RLC Program") at intersections in Nassau County. (<u>Id.</u> at ¶¶ 1,8.)

The proposed class is defined as "individual and businesses who paid a fine and fee as a result of [red light camera] violations for any [cameras] operated by ATS within the state of New York" for running a red light between 2009 to the present. (<u>Id.</u> at ¶ 46.) The Plaintiff also proposes a "subclass of persons/entities who were ticketed for red light violations in Nassau County from 2009 to present." (<u>Id.</u>)

**2. The RLC Program**

In 2009, as part of its RLC Program, Nassau County hired ATS to install and service red light cameras at intersections in Nassau County. (<u>Id.</u> at ¶ 12.) Red light cameras are devices that are designed to photograph vehicles that appear to be going through red lights in violation of

New York State traffic law. (Id.) ATS installed systems at Nassau County intersections whereby photographs of vehicles running red lights are sent to the registered owners or lessees of the vehicles, together with citations for violating the New York Vehicle & Traffic Law ("NYVTL"). (Id.)

The Plaintiff alleges that ATS was responsible for issuing notices of liability to individuals who were photographed running red lights, "maintaining calibration of the timing of yellow lights," "dictating the information to be printed on citations mailed to alleged violators[,] and timing the issuance of tickets." (Id. ¶ 13.)

According to the Plaintiff, the RLC Program was required to conform to certain federal standards. (Id. at ¶¶ 14–19.) In particular, the Plaintiff alleges that a page on Nassau TPVA's website states in connection with the RLC Program, "The goal is public safety. A yellow light that is too short or one that is too long can increase the risk of crashes. Before any camera is operational, both the vendor and the county make sure the signal timing is compliant with federal guidelines." (Id. at ¶14.)

In addition, the Plaintiff relies on NYVTL § 1680, which states:

> The department of transportation shall maintain a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state. Such uniform system shall correlate with and so far as practicable conform to nationally accepted standards. To the extent that the National Manual on Uniform Traffic Control Devices (hereinafter referred to in this section as MUTCD), promulgated by the Federal Highway Administration . . . does not conflict with the provisions of this chapter and the provisions of other laws of the state, the National MUTCD shall constitute such state manual and specifications . . . . The manual and its specifications is adopted as the state standard for traffic control devices on any street, highway, or bicycle path open to public travel.

N.Y. Veh. & Traf. Law § 1680 (McKinney); (Compl. at ¶¶ 15–16.)

According to the Plaintiff, the National Manual on Uniform Traffic Control Devices ("MUTCD") requires traffic lights to have a "yellow change interval minimum duration of three (3) seconds." (Compl. at ¶ 17.)  Thus, the Plaintiff contends that the lights at Nassau County intersections were required to have yellow traffic signals that lasted at least three seconds before changing to red traffic signals. (See id.)

However, the Plaintiff alleges that "certain traffic signals" in New York State, including Nassau County, operated by the Defendants do not conform to the MUTCD standard because they have yellow lights with a "minimum duration less than [the] mandated standards." (Id. at ¶ 20.)  In support of this assertion, the Plaintiff relies on "anecdotal evidence of improperly calibrated red light cameras in New York State" that has been allegedly "corroborated by a study by [the] New York Department of Transportation issued in or about 2011." (Id. at ¶ 22.)  She does not attach or provide excerpts of this report, nor does she specify what "anecdotal evidence" she refers to.  She also relies on a purported "CBS News" story documenting "one resident's complaint of too short yellow lights and her ad hoc observations on red light cameras in her business vicinity." (Id.)

The Plaintiff further alleges that the Defendants shortened the duration of yellow lights to increase the number of tickets, and thereby result in increased revenues for Nassau County.  In support of this assertion, the Plaintiff relies on a purported study by the Texas Transportation Institute, which found that "when yellow light duration was one second shorter than guidelines, red light violations doubled." (Id. at ¶ 21.)

She also points to a February 10, 2012 article in the "Courant," entitled, "[A] Long Island Less In Red Light Cameras: Is Connecticut Next?" (Id. at ¶ 25.)  According to the complaint, the article states that "the annual total of 459,000 camera-initiated red-light tickets in Nassau County

is more than twice the 170,000 issued by police for all varieties of traffic violations according to a quoted [Nassau TPVA] spokesperson." (Id. at ¶ 26.) She further alleges that thirty eight percent of the RLC Program's revenue comes from "right on red rolling stop" violations. (Id. at ¶ 37.)

By shortening the duration of the yellow lights at intersections in Nassau County, the Plaintiff alleges that "motorists travel[l]ing through the intersection[s] [have] insufficient time to stop safely," which "force[s] motorists [to] go[] through the light and get[] a red light camera system violation notice from [the] Defendants." (Id. at ¶ 33.) Therefore, she alleges that the motorists are more likely to be subject to tickets as result of the Defendants' actions. (See id.)

**3. The Plaintiff's Red Light Ticket**

On January 10, 2011, the Plaintiff received a "Notice of Liability" from Nassau TPVA. (Compl. at ¶ 42; Mulholland Decl., Ex. B.) The Notice stated that on November 22, 2010, the Plaintiff "did not stop for a red light" in violation of NYVTL § 1111(d). (Mulholland Decl., Ex. B.) As a result, the Plaintiff was subject to a fine of $50.00 plus administrative fees of $15.00 for a total amount of $65.00. (Id.) The Notice further provided a link to a website where the Plaintiff could view the violation, together with pictures and a video of the Plaintiff's vehicle at the time of the violation. (Id.)

According to the Notice, the Plaintiff was required to remit payment of $65.00 to Nassau County or contest the violation before February 22, 2011. (Id.) With respect to contesting the violation, the Notice instructed:

> You may contest the imposition of this fine by signing and mailing the coupon below to request an appearance before the Nassau County Traffic and Parking Violations Agency. Your request must be received by the Due Date . . . . Upon receipt, you will be notified of the date, time and location of your hearing.

(Id.)

The Plaintiff paid the $65 fee and did not contest the Notice. (Compl. at 43–44.)

## B. Procedural History

As stated above, on January 7, 2014, the Plaintiff commenced the present action and asserted the following claims (i) a claim under 42 U.S.C. §§ 1983 and 1988 for violating the Due Process and Equal Protection Clauses of the Fourteenth Amendment; (ii) a claim under Article 1, § 6 of the New York State Constitution; (iii) a common law claim for unjust enrichment; (iv) a NYCRL § 11 claim for being fined "without reasonable cause"; (v) a claim for injunctive and declaratory relief ordering the Defendants to comply with federal and state law regulations with respect to the duration of yellow light traffic signals; and (vi) a claim for a declaratory judgment that tickets issued with "mis-described or illegible information" violated NYVTL § 238. (Compl. at ¶¶ 55–87.)

Presently before the Court are the separate motions by the Defendants to dismiss the Plaintiff's class action complaint. In response, the Plaintiff withdrew her § 1983 claims based on alleged violations of the Equal Protection clause and the procedural component of the Due Process clause. (The Pl.'s Cross Mem. of Law at 3.) Accordingly, the Defendants' motions are granted as to those claims. See, e.g., Massaro v. Allingtown Fire Dist., No. 3:03-CV-00136 (EBB), 2006 WL 1668008, at *7 (D. Conn. June 16, 2006) ("In his Complaint, [the] [p]laintiff claims that [the] [d]efendants violated his right to due process guaranteed by the United States and Connecticut constitutions. In his Opposition Memorandum, he withdraws those due process claims as he 'did not intend to pursue those at trial.'. . . . Accordingly, [the] [p]laintiff's due process claims are dismissed and [the] [d]efendants' Motion to Dismiss as to those claims is therefore granted.").

Furthermore, the Plaintiff fails to rebut the Defendants' arguments that (i) the Plaintiff's

claim for a declaratory judgment and monetary relief with respect to tickets that were allegedly issued with "mis-described or illegible information" and (ii) the Plaintiff's NYCRL § 11 claim should be dismissed. Accordingly, the Court dismisses the Plaintiff's NYCRL § 11 claim and her claim for declaratory and monetary relief to the extent it relies on allegations that the Defendants issued tickets that contained "mis-described or illegible information." See Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) ("This [c]ourt may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed") (quoting Arma v. Buyseasons, Inc., 591 F.Supp.2d 637, 643 (S.D.N.Y. 2008)); see also Abbatiello v. Monsanto Co., 522 F. Supp. 2d 524, 530 (S.D.N.Y. 2007) ("Because the [e]mployees do not oppose the motion, the [c]ourt deems this claim abandoned, and [the defendant's] motion to dismiss the [e]mployees' assault and battery claims is granted on that basis.").

Thus, the Court will consider the parties' arguments with respect to the Plaintiff's remaining claims, namely: (i) substantive Due Process claims under Article 1, Section 6 of the New York State Constitution and 42 U.S.C. § 1983; (ii) a claim for unjust enrichment; and (iii) a claim for a declaratory judgment and an order enjoining the Defendants from operating the RCP program in violation of federal and state regulations with respect to the duration of yellow light traffic signals.

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 12(b)(1)

A court can dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Lewis v.

Carrano, 844 F. Supp. 2d 325, 328 (E.D.N.Y. 2012) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" Bethune v. Maria, No. 10 CIV. 9070 (PAE), 2012 WL 896185, at *3 (S.D.N.Y. Mar. 16, 2012) (quoting Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)). However, "[b]ecause 'standing is challenged on the basis of the pleadings, [the court must] accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" MacIssac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) (quoting Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.3d 110, 114 (2d Cir. 2002)).

Further, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may consider evidence outside of the pleadings. Id. (citing Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008); see also Sadikoglu v. United Nations Dev. Programme, No. 11 CIV. 0294 PKC, 2011 WL 4953994, at *2 (S.D.N.Y. Oct. 14, 2011) ("'[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'") (quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

### 2. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, the court "'must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" Luna v. N. Babylon Teacher's Org., 11 F. Supp.3d 396, 400–401 (E.D.N.Y. 2014) (Spatt, J.) (quoting Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008)).

In addition, a plaintiff opposing a Rule 12(b)(6) motion must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id.; see also Luna, 11 F. Supp.3d at 400–401 ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

The Court notes that the Defendant ATS appended to its present motion the Notice of Liability, dated the January 10, 2011, that Nassau TPVA sent to the Plaintiff. (See Mulholland Decl., Ex. B.) When considering a Rule 12(b)(6) motion, a court can "only consider the complaint, any written instrument attached to the complaint as exhibits, or any documents incorporated in the complaint by reference." Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS), 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014) (Spatt, J) (citing Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000)); see also Ahluwalia v. St. George's Univ., LLC, No. 14-CV-3312 ADS), 2014 WL 6674615, at *8 (E.D.N.Y. Nov. 25, 2014) (Spatt, J) ("Furthermore, in deciding a motion to dismiss, the Court is confined to 'the allegations contained within the four corners of [the] complaint.' . . . . This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken.") (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998)).

Although the Plaintiff does not attach the Notice of Liability to her class action complaint, she makes explicit reference to it: "On January 10, 2011, [the] Plaintiff received a Notice of Liability (NOL 1691100038806) related to an alleged violation of VTL Section III . . . that allegedly occurred[.]" (Compl. at ¶ 42.) Further, her claims for liability arise, at least in part, from the Plaintiff's receipt of the Notice of Liability. Thus, the Court finds that the Plaintiff incorporated the January 10, 2011 Notice of Liability by reference to the complaint, and as such, the Court can consider it in deciding the present motion. See, e.g., Azzolini v. Marriott Int'l, Inc., 417 F. Supp. 2d 243, 246 (S.D.N.Y. 2005) ("Although [the] plaintiff did not attach the employee handbook to his complaint, the plaintiff relied on the terms and effects of the employee handbook by referencing the progressive discipline policy as the policy that Marriott breached.")

## B. As to the Plaintiff's Due Process Claims

The Defendants argue that the Plaintiff's state and federal substantive Due Process claims should be dismissed because (1) the Plaintiff lacks standing to bring those claims and (2) the claims fail as a matter of law. The Court will address both arguments in turn.

### 1. Rule 12(b)(1) Motion

To establish standing under Article III of the United States Constitution, a plaintiff needs to "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." Palmieri v. Town of Babylon, No. 01 CV 1399 (SJ), 2006 WL 1155162, at *5 (E.D.N.Y. Jan. 6, 2006) aff'd, 277 F. App'x 72 (2d Cir. 2008) (citing Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004)), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)); see also Ziemba v. Rell, 409 F.3d 553, 554 (2d Cir. 2005).

### a. Injury-in-Fact

With respect to the "injury-in-fact" requirement, "[e]ven a small financial loss is an injury for purposes of Article III standing." Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 85 (2d Cir. 2013) (finding that the injury-in-fact requirement to be satisfied by allegations of expenses incurred in buying soap); see also United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 690, 93 S. Ct. 2405, 2417, 37 L. Ed. 2d 254 (1973) ("We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote.").  Therefore, the Plaintiff's allegation that she paid a fine of $65.00 as a result of the Defendants' actions, although for a small amount, satisfies the injury-in-fact requirement.

### b. Causation

With respect to the causation requirement, the plaintiff's injury must "'be fairly traceable to the defendant's conduct and likely to be redressed by the requested relief." Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon, No. 13-1776-CV, 2014 WL 7272269, at *4 (2d Cir. Dec. 23, 2014); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 590, 112 S. Ct. 2130, 2152, 119 L. Ed. 2d 351 (1992) ("This Court has held that Article III requires, as an irreducible minimum, that a plaintiff allege . . . an injury that . . . . is fairly traceable to the defendant's allegedly unlawful conduct.").

The Defendants contend that the Plaintiff cannot show causation because she voluntarily chose to pay her ticket instead of contesting it, and thus, her payment of the fine cannot be fairly attributable to the Defendants' actions.  The Court disagrees.

Article III causation does not require that a plaintiff demonstrate that her injury was directly caused by the Defendant's actions; rather, she merely needs to show that her injury was

"fairly traceable" to the defendant's conduct.  Rothstein v. UBS AG, 708 F.3d 82, 92 (2d Cir.

2013) ("The requirement that a complaint 'allege[ ] an injury' that is 'fairly traceable' to

defendants' conduct . . .  for [purposes of] constitutional standing' is a 'lesser burden' than the

requirement that it show proximate cause . . . . Thus, the fact that there is an intervening cause of

the plaintiff's injury may foreclose a finding of proximate cause but is not necessarily a basis for

finding that the injury is not 'fairly traceable' to the acts of the defendant."); see also Bennett v.

Spear, 520 U.S. 154, 169, 117 S. Ct. 1154, 1164, 137 L. Ed. 2d 281 (1997) (noting that the

Article III causation requirement is "relatively modest" at the pleading stage).

Although the Plaintiff does not provide specific allegations that directly link her traffic

ticket to the Defendants' actions in allegedly lowering the duration for yellow traffic signals, the

Court finds, particularly at this stage of the litigation, that a factfinder could plausibly infer that

the Defendants' actions were a factor in causing her to run the red light.  See, e.g., Rothstein,

F.3d at 92 (2d Cir. 2013) ("We, like other courts, have noted that, 'particularly at the pleading

stage, . . . 'for purposes of satisfying Article III's causation requirement, we are concerned with

something less than the concept of proximate cause.'""); Barbour v. Haley, 471 F.3d 1222, 1226

(11th Cir. 2006) ("'[E]ven harms that flow indirectly from the action in question can be said to

be 'fairly traceable' to that action for standing purposes.'") (citing Focus on the Family v.

Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1273 (11th Cir. 2003)).

### c. Redressability

With respect to the redressability requirement, the Plaintiff seeks monetary damages and

equitable relief in the form of an order to enjoin the effects of the Defendants' alleged

unconstitutional operation of the RCP Program.  The Plaintiff must demonstrate standing as to

both of these forms of relief.  MacIssac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 593

(S.D.N.Y. 2011) ("'[A] plaintiff must demonstrate standing separately for each form of relief sought.'" (quoting parenthetically <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.</u> (TOC), Inc., 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

Where, as here, the Plaintiff seeks compensatory damages under § 1983 for economic injuries sustained as a result of the Defendants' alleged constitutional violations, an order from the Court awarding her monetary damages for the fine that she paid will redress her injury. <u>See, e.g.,</u> Cunney, 2014 WL 5025957 at *16 ("[W]here [the] [p]laintiff seeks compensatory damages under § 1983 for economic injuries sustained as a result of these constitutional violations, an order from the Court awarding Plaintiff monetary relief will redress his injury."); <u>Maxineau v. City of New York,</u> No. 11-CV-02657 (ENV), 2013 WL 3093912, at *11 (E.D.N.Y. June 18, 2013) ("Because [the plaintiff] alleges constitutional violations, a successful outcome in litigation would entitled him to, at the very least, nominal damages . . . . This is sufficient availability of redress for the purposes of Article III standing.").

However, the Plaintiff's request for equitable relief appears less plausible. In seeking prospective relief like an injunction, "a plaintiff must show that he can reasonably expect to encounter the same injury again in the future — otherwise there is no remedial benefit that he can derive from such judicial decree." <u>Id.</u> (citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102–105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)); <u>see also</u> <u>Williams v. City of New York</u>, No. 12-CV-6805 VEC, 2014 WL 3639153, at *3 (S.D.N.Y. July 22, 2014) ("In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that '[s]he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'") (quoting <u>Shain v. Ellison</u>, 356 F.3d 211, 215 (2d Cir. 2004)). Notably, a plaintiff cannot "rely on past injury to satisfy the injury

requirement but must show a likelihood that he . . . will be injured in the future." <u>Shain</u>, 356

F.3d at 215.

The Plaintiff does not allege any facts suggesting that she will be subject to additional

tickets if the Court does not grant the injunctive relief she requests. Although there is a chance

that she would run another red light as a result of the Defendants' actions, such a chance is too

speculative to confer Article III standing on the Plaintiff's claim for a permanent injunction.

<u>See, e.g.,</u> <u>Williams</u>, 2014 WL 3639153 at *4 ("Although there is certainly some chance that the

[p]laintiff might find herself arrested again by police officers who do not offer her a sign

language interpreter, that is the same speculative chance that the Supreme Court in <u>Lyons</u> and the

Second Circuit in <u>Shain</u> found insufficient to confer standing."); <u>see also</u> <u>Gowanus Dredgers v.</u>

<u>Baard</u>, No. 11-CV-5985 PKC, 2013 WL 6667361, at *11 (E.D.N.Y. Dec. 17, 2013) ("[The]

theoretical possibility that [the] [p]laintiff may be losing donations because of the alleged

Trademark infringement is too speculative to give [the] [p]laintiff standing to sue. This is

particularly true given that [the] [p]laintiff seeks a permanent injunction."). Accordingly, the

Court grants the Defendants' Rule 12(b)(1) motion solely with respect to the Plaintiff's claim for

equitable relief.

### 2. Rule 12(b)(6) Motion

The Defendants also argue that the Plaintiff**'s** substantive due process claim fails as a

matter of law because (1) the substantive component of the Due Process clause protects

individuals from arbitrary government actions relating to fundamental rights — such as

marriage, family, procreation, and the right to bodily integrity — and not actions which result in

relatively small fines, such as the $65 fine at issue here; and (2) the Plaintiff has failed to plead

any facts showing that the government's actions were arbitrary, conscience shocking, or ill-advised.  The Court agrees.

To state a claim under § 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. Ahmed v. Town of Oyster Bay, 7 F. Supp. 245, 255 (E.D.N.Y. 2014) (citing 42 U.S.C. § 1983); see also Katz v. Klehammer, 902 F.2d 204, 206 (2d Cir. 1990) ("In order to state a cognizable claim under Section 1983, Katz must allege conduct under color of state law that deprived him of rights secured by the Constitution or laws of the United States.").

Here, the Plaintiff alleges that the Defendants, acting under color of state law, violated her rights under the substantive component of the Due Process Clause of the Fourteen Amendment, which protects individuals from "arbitrary action of the government."  Ahmed, 7 F. Supp. at 255 (quoting Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)); see also Kuck v. Danaher, 600 F.3d 159, 167 (2d Cir. 2010) ("Generally speaking, for state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.") (internal quotation marks, citations, and alteration omitted).

However, the scope of rights afforded by the Due Process clause is extremely limited. TZ Manor, LLC v. Daines, 815 F. Supp. 2d 726, 744 (S.D.N.Y. 2011) aff'd, 503 F. App'x 82 (2d Cir. 2012) ("'[S]ubstantive due process does not entitle federal courts to examine every alleged violation of state law.'") (quoting Kuck, 600 F.3d at 167); see also Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due

process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.").

In particular, to state a valid substantive Due Process claim, the Plaintiff must sufficiently allege: (1) a "valid property interest" or "fundamental right"; and (2) that the defendant infringed on that right by conduct that "shocks the conscience" or suggests a "gross abuse of governmental authority." Sloup v. Loeffler, No. 05-CV-1766 JFB (AKT), 2008 WL 3978208, at *10 (E.D.N.Y. Aug. 21, 2008) (citing Cine SK8 v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007)); see also Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'").

## A. Property Interest

"Not all property rights are entitled to the protections of substantive due process." Reyes v. Cnty. of Suffolk, 995 F. Supp. 2d 215, 230 (E.D.N.Y. 2014) (Spatt, J) (citing Ferrari v. County of Suffolk, No. 10–CV–4218(JS)(GRB), 2013 WL 4017022, at *9 (E.D.N.Y. Aug. 6, 2013)). Rather, the substantive component of the Due Process clause protects "only those interests that are implicit in the concept of ordered liberty, i.e., those rights that are so rooted in the traditions and conscience of our people as to be ranked as fundamental[.]" Id. (citation omitted) see also Venghaus v. City of Hartford, No. 06-CV01452 (DJS), 2012 WL 1050014, at *8 (D. Conn. Mar. 27, 2012) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.") (quoting Albright v. Oliver, 510 U.S. 266, 271–72, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

Here, the Plaintiff claims a property right in a $65.00 fine. (The Pl.'s Opp'n Mem. of Law at 10.) However, courts have repeatedly found that the substantive Due Process clause does

not protect plaintiffs from modest fines, such as the $65.00 fine claimed by the Plaintiff.  See, e.g., Idris v. City of Chicago, Ill., 552 F.3d 564, 566 (7th Cir. 2009) ("The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property interest so modest is a fundamental right."); Kelly v. Rice, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005) ("Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of 'substantive due process.' If a claim that a police officer's deliberate indifference caused the death of a motorist during a high-speed chase does not violate substantive due process, . . . then surely the issuance of a parking ticket on a single occasion does not do so."); Krieger v. City of Rochester, 42 Misc. 3d 753, 770, 978 N.Y.S.2d 588 (Sup. Ct. 2013) ("Further, the modest $50 penalty is not so substantial as to infringe upon a person's private property rights."); cf. Reyes v. Cnty. of Suffolk, 995 F. Supp. 2d 215, 230 (E.D.N.Y. 2014) (Spatt, J) ("Therefore, since the Complaint alleges that the Plaintiff's property interest is the use and possession of his vehicle, he has failed to state a claim for violation of substantive due process.").

The cases cited by the Plaintiff are not to the contrary.  The Plaintiff relies on two cases, which found valid property interests in the context of procedural Due Process claims, not Substantive Due process claims. See, e.g., Contractors Against Unfair Taxation Instituted on New Yorkers v. City of New York, No. 93 CIV. 4718 (KMW), 1994 WL 455553, at *4 (S.D.N.Y. Aug. 19, 1994) (finding that the plaintiffs had sufficiently alleged a "property interest" to make a procedural due process claim with respect to "the money allegedly exacted from defendants for payment of fines for traffic violations" ) (emphasis added); People v. Walley, 21 Misc. 2d 623, 629, 202 N.Y.S.2d 859, 865 (N.Y. Co. Ct. 1959) (finding that the procedural Due Process clause requires "something further than a traffic summons" for the "prosecution of traffic infractions.").

As such, these cases are not applicable to the Plaintiff's substantive Due Process claims, which require the Plaintiff to allege property interest of a much greater value. See Gizzo v. Ben-Habib, No. 13-CV-2139 (KMK), 2014 WL 4387229, at *15 (S.D.N.Y. Sept. 5, 2014) ("'Even if one assumes the existence of a property right, . . . not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process right[s] are created only by the Constitution.'") (quoting Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)); see also Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Town of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) ("'Substantive due process protects only those interests that are "implicit in the concept of ordered liberty.'"") (quoting Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937)); Walker v. City of Waterbury, 601 F. Supp. 2d 420, 423 (D. Conn. 2009) aff'd, 361 F. App'x 163 (2d Cir. 2010) ("Unlike in the case of procedural due process, [in the case of substantive due process], it is not enough to have a property right under state law.") (citation omitted).

Accordingly, the Court finds that the Plaintiff has failed to plausibly allege a property interest in a $65.00 fine under the substantive component of the Due Process clause.

### B. Arbitrary or Outrageous Infringement on Property Interest

Even if the Court were to find that the Plaintiff had a property interest in a $65 fine, she fails to state any non-conclusory facts that plausibly suggest that the Defendants acted intentionally or recklessly by lowering the duration of yellow traffic lights.

As stated above, in order to meet the second prong of a substantive Due Process claim, a plaintiff must show that "the government's infringement was " 'arbitrary,' 'conscience shocking,'

or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" <u>Ahmed</u>, 2014

WL 1092363 at *10 (citing <u>Ferran v. Town of Nassau</u>, 471 F.3d 363, 369–70 (2d Cir. 2006)); <u>see</u>

<u>also</u> <u>Corbley v. Cnty. of Suffolk</u>, No. CV 13-1884 (LDW), 2014 WL 4678284, at *4 (E.D.N.Y.

Sept. 22, 2014) ("Substantive due process is an outer limit on the legitimacy of governmental

action. It does not forbid governmental actions that might fairly be deemed arbitrary or

capricious and for that reason correctable in a state court lawsuit seeking review of

administrative action.") (citing <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 262–263 (2d Cir.

1999)).

Other than a conclusory allegation that the Defendants' motivation was "money," the

Plaintiff relies on a purported study by the Texas Transportation Institute, which found that

"when yellow light duration was one second shorter than guidelines, red light violations

doubled" and a February 10, 2012 article in the "Courant," which stated that "the annual total of

459,000 camera-initiated red-light tickets in Nassau County is more than twice the 170,000

issued by police for all varieties of traffic violations according to a quoted [Nassau TPVA]

spokesperson." (<u>Id.</u> at ¶¶ 21, 26.) Neither of these articles plausibly suggests the kind of

"egregious" and "conscious shocking" conduct that is required to sustain a substantive Due

Process claim. <u>See</u> <u>Kuck v. Danaher</u>, 600 F.3d 159, 167 (2d Cir. 2010) ("Even more, substantive

due process does not entitle federal courts to examine every alleged violation of state law,

especially ones that, while perhaps vexatious, are more routine than egregious.").

The Plaintiff argues that the Defendants' actions in allegedly lowering the duration of the

yellow light traffic signal were *ultra vires* because they did not comply with state and federal

standards for traffic lights, and as such, the Court should infer that the Defendant's actions were

arbitrary and capricious. (The Pl.'s Opp'n Mem. of Law at 7–9.) *Ultra vires* refers to "any

governmental action taken outside the scope of the defendant's authority" under state or federal law. TZ Manor, LLC, 815 F. Supp. 2d at 751.

In support, the Plaintiff relies on Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 779 (2d Cir. 2007). There, the plaintiff was an organization that owned a property for which it had obtained a permit to operate a dance club. The defendant, a town board, amended the permit to prevent the plaintiff from operating the dance club. Id. at 783. Thereafter, the plaintiff filed suit alleging that the board violated its substantive Due Process rights by amending the special use permit. Id. 787. The Second Circuit reversed the district court's decision granting summary judgment to the defendant on the plaintiff's substantive Due Process claim. Id. at 790. In particular, the court found that it was reasonable to infer that the defendant's actions in amending the plaintiff's permit were sufficiently arbitrary or irrational because it found that the defendant "did not have authority for the actions it took regarding [the plaintiff's] permit" under the town code and that the process that the board used in amending the permit "failed to comply with the procedural requirements" of the town code. Id. at 790.

Subsequent courts have read Cine SK8 broadly to mean that actions taken without authority under state law can give rise to a conclusion that the state entity lacked a rationale basis for its actions, and therefore, its actions violated the plaintiff's substantive Due Process rights. See, e.g., Watrous v. Town of Preston, 902 F. Supp. 2d 243, 267 (D. Conn. 2012) ("At the outset, the court notes that the Second Circuit has strongly suggested that actions taken without authority under state law, such as when a board lacks jurisdiction over property, give rise to a conclusion that the state entity lacked a rational basis for their actions, and that such actions violate substantive due process."); TZ Manor, LLC, 815 F. Supp. 2d at 745 ("Cine SK8 can be read broadly to stand for the proposition that any governmental action taken outside the scope of

the defendant's authority, i.e., an 'ultra vires' act, is 'sufficiently arbitrary to amount to a substantive due process violation.'").

However, this *ultra vires* theory does not apply here because the Plaintiff offers no allegations suggesting that the Defendants lacked authority under the RLC program to setup traffic light cameras at intersections in Nassau County. In this regard, the Court finds the instant case to be more analogous to TZ Manor, LLC v. Daines, 815 F. Supp. 2d 726, 729–36 (S.D.N.Y. 2011). In that case, the plaintiff, a corporation alleged that the defendant, an official of the state department of health, violated its substantive Due Process rights by allegedly allowing a temporary receiver to continue operating a nursing home after the defendant had approved the plaintiff's application to take over the nursing home. The court rejected the plaintiff's argument that the case was analogous to Cine SK8 and that the defendant had acted *ultra vires*:

> The Court stresses that it is not making a definitive determination whether Defendants' actions as alleged in this case complied with every jot and tittle of state law—and it need not do so under the well established substantive due process standard. It is enough to conclude 1) that the statutes and regulations governing DOH's administration of adult homes give it considerable discretion, both generally and in the specific case of receivership; 2) that even if these statutes and regulations governed the circumstances described in the Amended Complaint, in the closest analogous situation provided for in applicable law DOH has discretion to take the actions Plaintiffs allege it took here; and 3) that nothing in that law states or even implies that DOH lacked authority to do what it did . . . Thus, Cine SK8 does not support a substantive due process claim in this case.

Id. at 750. In TZ Manor, the court dismissed the plaintiff's substantive Due Process claim. Id.

In the instant case, as in TZ Manor, it is clear that the Defendants had the authority to install red light traffic cameras and issue tickets to vehicles caught on video running red lights: NYVTL § 1111-b (a)(1) empowers the county of Nassau to "to install and operate traffic-control signal photo violation-monitoring devices" and impose "monetary liability on the owner of a vehicle for failure of an operator thereof to comply with traffic-control indications." N.Y. Veh.

& Traf. Law § 1111-b (McKinney). As such, the Defendants were not acting *ultra vires*, and

Cine SK8 is not applicable to the instant case. See TZ Manor, LLC, 815 F. Supp. 2d at 750

("[N]othing in that law states or even implies that DOH lacked authority to do what it did . . . .

Thus, Cine SK8 does not support a substantive due process claim in this case."); see also New

York State Rest. Ass'n v. New York City Dep't of Health & Mental Hygiene, 303 F. Supp. 2d

265, 273 (E.D.N.Y. 2004) ("Even assuming, without ruling, that [the] plaintiffs possess

constitutionally protected property rights that are affected by the government actions of which

they complain (a claim defendants dispute), substantive due process does not protect against

government action that is merely 'incorrect or ill-advised.'").

Therefore, the Court finds that Defendants' alleged actions fall well short of the

"egregious" or "conscious shocking" behavior subject to liability under the substantive Due

Process clause.

## C. As to the Plaintiff's Unjust Enrichment Claim

Under New York law, to make a claim for unjust enrichment, a plaintiff must allege that:

"(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience

militate against permitting defendant to retain what plaintiff is seeking to recover." Legurnic v.

Ciccone, No. 09-CV-1436 (ADS), 2014 WL 6674593, at *7 (E.D.N.Y. Nov. 25, 2014) (Spatt, J)

(citing Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004)); see also

Transcience Corp. v. Big Time Toys, LLC, No. 13-CV-6642 ER, 2014 WL 4827878, at *6

(S.D.N.Y. Sept. 23, 2014) (same). "The basis of a claim for unjust enrichment is that the

defendant has obtained a benefit which in 'equity and good conscience' should be paid to the

[p]laintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790, 967 N.E.2d 1177 (2012)

(citing Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 (2011))

However, as the Defendants correctly point out, the Plaintiff's claim for unjust enrichment is duplicative of her § 1983 substantive Due Process claim. In particular, as with her substantive Due Process claim, she alleges that the Defendants were unjustly enriched by collecting more tickets as a result of allegedly lowering the duration of yellow traffic lights in violation of federal and state standards. (Am. Compl. at ¶¶ 71–77.) The Court of Appeals has held that an "unjust enrichment claim" "is not a catchall cause of action to be used when others fail," and has dismissed such claims where they are duplicative of other claims. Corsello, 18 N.Y.3d at 791, 967 N.E.2d 1177 ("To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects. The unjust enrichment claim should be dismissed."); Town of Wallkill v. Rosenstein, 40 A.D.3d 972, 974, 837 N.Y.S.2d 212 (2d Dep't 2007) ("For reasons other than those set forth by the Supreme Court, those branches of the defendants' motion which were for summary judgment dismissing the causes of action alleging breach of fiduciary duty, fraudulent concealment, unjust enrichment, and breach of contract were properly dismissed. They were merely duplicative of the legal malpractice cause of action, as they arose from the same facts and did not allege distinct and different damages.").

Moreover, the Plaintiff has not sufficiently alleged that the Defendant should in "equity and good conscience" return the $65.00 fine paid by the Plaintiff. The Notice of Liability that the Plaintiff received from Nassau TPVA gave the Plaintiff the opportunity to contest her ticket by "request[ing] an appearance before the Nassau County Traffic and Parking Violations Agency." (Mulholland Decl., Ex. B.) Instead, the Plaintiff knowingly and voluntarily chose to pay the $65.00 fine without raising her objections to the ticket. (Compl. at 43–44.) Under such circumstances, the factfinder could not plausibly conclude that the Defendants in "equity and

good conscience" must return the Plaintiff's $65.00 fine. See In re Jetblue Airways Corp. Privacy Litig., 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005) ("Under New York law, the granting of equitable relief on a theory of unjust enrichment requires the 'indispensable ingredient' of an injustice as between the two parties involved.").

Accordingly, the Court grants the Defendants' separate motions to dismiss the Plaintiff's unjust enrichment claim.

## D. As to the Plaintiff's Claim for Declaratory and Injunctive Relief

Finally, the Plaintiff seeks an (i) injunction enjoining the Defendants from operating the RLC Program in violation of federal and state standards; and (ii) a declaratory judgment that the RLC Program failed to comply with federal and state standards. (Am. Compl. at 78–81.)

As stated previously, the Plaintiff lacks standing to make her claim for injunctive relief. In addition, the Court has concluded that the Plaintiff's constitutional and state law claims fail as a matter of law. Without any valid cause of action, her claims for declaratory and injunctive relief also fail. See Patchen v. Gov't Employers Ins. Co., 759 F. Supp. 2d 241, 251 (E.D.N.Y. 2011) ("As for the plaintiffs' request for injunctive relief, the plaintiffs presently have no valid causes of action pending before the Court, and therefore have no basis for injunctive relief."); GuideOne Specality Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 212 (E.D.N.Y. 2010) ("The Court need not discuss [the] plaintiff's request for declaratory relief against [the] defendant . . . because [the] plaintiff failed to state a valid cause of action against her. Accordingly, such relief cannot be granted.").

Accordingly, the Court grants the Defendants' separate motions to dismiss the Plaintiff's claims for injunctive and declaratory relief.

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Defendants' motions to dismiss are granted and the Plaintiff's complaint is dismissed in its entirety.

The Clerk of the Court is directed to close this case.


**SO ORDERED.**
Dated: Central Islip, New York
January 24, 2015

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge